IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SOURCEONE, INC. (DE), et al.,
    Plaintiffs,

v.    Civil Action No. 3:19-cv-907

ESI, INC. OF TENNESSEE, et al.,
    Defendants.

## OPINION

This case involves several contracts related to upgrading a manufacturing facility in Richmond, Virginia. E.I. du Pont de Nemours and Company ("DuPont") contracted with Veolia Energy Operating Services LLC ("Veolia") to upgrade the utilities infrastructure at DuPont's industrial plant. This included upgrading the cogeneration plant's burners. Veolia entered into a contract with SourceOne, Inc. (DE) ("SourceOne"), to implement the burner upgrades, which, in turn, contracted with ESI, Inc. of Tennessee ("ESI"), to perform engineering services. Veolia and SourceOne have sued ESI and John Zink Company, LLC ("John Zink"), alleging that faulty equipment cost them millions of dollars on the burner upgrade project. Relevant here, SourceOne has asserted three claims against ESI: (1) breach of the engineering agreements (Count One), (2) breach of warranty (Count Two), and (3) contractual indemnity (Count Three). Veolia has asserted two claims against ESI: (1) negligent misrepresentation (Count Five) and (2) contractual indemnity as a third-party beneficiary (Count Six).

ESI has moved to dismiss Counts Two, Three, Five, and Six pursuant to Federal Rule of Civil Procedure 12(b)(6). Because the plaintiffs have failed to state a claim for negligent misrepresentation, the Court will grant ESI's motion to dismiss Count Five. In all other respects, the Court will deny the motion.

## I. **FACTS ALLEGED IN THE AMENDED COMPLAINT**

On February 5, 2018, DuPont and Veolia entered into a contract under which Veolia would upgrade, operate, and maintain the utilities infrastructure at DuPont's manufacturing facility in Richmond, Virginia. In part, the contract required Veolia to convert the burners in the DuPont facility from coal-fired to natural gas-fired. On March 6, 2018, Veolia entered into a subcontract with SourceOne to convert the burners. This required SourceOne to design, procure equipment for, install, and commission the new gas burners.

SourceOne had previously entered into a series of agreements with ESI to perform engineering services for the project, including for the burner upgrades ("the ESI agreements"). The ESI agreements required ESI to visit DuPont's facility, evaluate the existing system, develop specifications and designs for the burners, collect and evaluate bids from burner manufacturers, and recommend a burner manufacturer to SourceOne. The ESI agreements also included a warranty provision that guaranteed "that its services would conform to the specifications, drawings, samples, or descriptions furnished or adopted by SourceOne, would be of good quality and workmanship and free from defects, would be suitable for their intended purposes, and would comply with all applicable laws, rules, and regulations." (Am. Compl. ¶ 39.) Finally, the ESI agreements required ESI to indemnify, defend, and hold harmless SourceOne and its affiliates "against all damages, claims, actions, liabilities, fines, assessments, and expenses, including reasonable attorneys' fees and costs" caused by "any defect in ESI's work or services, any breach of warranty, . . . or the negligent acts or omissions of ESI, its agents, representatives, employees, or subcontractors related to the performance of" the ESI agreements. (*Id.* ¶ 45.)

After reviewing bids for the burner equipment, ESI recommended Coen Company, Inc., and John Zink to supply the new burners for the project ("the suppliers").[1] Following ESI's recommendation, SourceOne contracted with the suppliers to purchase burners. Although the burners matched ESI's specifications, the burners "were incapable of achieving steam output at even a fraction of the specified full load steam flow without overheating downstream superheater equipment" and "would completely melt the downstream equipment" if operated at their specified capacity. (*Id.* ¶¶ 23-24.) Further, the burners "cause[d] significant, deleterious flame impingement on the superheater equipment, causing increased tube surface oxidation and negatively [affecting] operations and maintenance obligations, and decreasing equipment life." (*Id.* ¶ 27.)

SourceOne and Veolia attribute this inadequate performance to ESI's errors and its failure "to properly perform the design and engineering services" described in the ESI agreements. (*Id.* ¶ 26.) They also attribute the issues to the suppliers' inaccurate estimates of flame length and "inappropriate decision" to use a specific boiler-burner combination. (*Id.* ¶ 28.) SourceOne and Veolia contend that these errors resulted in project delays; lost revenue; reduced useful life of the equipment; costs related to investigating burner performance and operational modifications, reconfiguring and modifying equipment, and operating and maintaining the equipment; and damage to downstream equipment.

## II. DISCUSSION[2]

### A. *Count Two: Breach of Warranty*

In Count Two, SourceOne alleges that ESI breached the "express warranties" in the ESI agreements. (Am. Compl. ¶ 40.) ESI argues that Count Two duplicates the breach of the contract

---

[1] The plaintiffs voluntarily dismissed Coen as a defendant in this case.

[2] ESI has moved to partially dismiss the amended complaint pursuant to Rule 12(b)(6). A Rule 12(b)(6) motion gauges the sufficiency of a complaint without resolving any factual

claim set forth in Count One.[3] ESI also argues that if SourceOne prevails on Count One, the Court would not need to reach Count Two.

Federal Rule of Civil Procedure 8 allows a party to "set out [two] or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2); *see also SunTrust Mortg., Inc. v. Old Second Nat'l Bank*, No. 3:12-cv-99, 2012 WL 1656667, at *2 (E.D. Va. May 10, 2012). Further, although a party may not receive duplicative recovery, "a plaintiff has the right to plead alternative theories of recovery based on entirely separate provisions of [a contract]." *Id.*

SourceOne bases its breach of warranty claim against ESI on the express warranties in the ESI agreements. It bases its breach of contract claim, on the other hand, on both the warranties and other obligations in the ESI agreements. (*See* Am. Compl. ¶ 34.) Further, a plaintiff need not use specific words to indicate that it is pleading an alternative claim. *See TSC Research, LLC v. Bayer Chems. Corp.*, 552 F. Supp. 2d 534, 540 (M.D.N.C. 2008) (explaining that a complaint need not "use words from which it can be reasonably inferred that plaintiff is pleading in the alternative"

---

discrepancies or testing the merits of the claims. *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). In considering the motion, a court must accept all allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). The principle that a court must accept all allegations as true, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a Rule 12(b)(6) motion to dismiss, a complaint must state facts that, when accepted as true, state a claim to relief that is plausible on its face. *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

[3] Specifically, the plaintiffs allege in Count One that ESI breached the ESI agreements by committing a burner design error, preparing a defective burner specification and boiler design, recommending a contract with the suppliers, failing to adequately perform its work, and "otherwise failing to properly perform the obligations it assumed under the Engineering Agreements." (*Id.* ¶ 34.)

because "[i]t is not clear that Rule 8(e)(2) requires [that] level of technical specificity"). Accordingly, the Court will deny ESI's motion to dismiss Count Two.

### B. Counts Three and Six: Contractual Indemnity

In Counts Three and Six, the plaintiffs contend that the indemnity provisions in the ESI agreements require ESI to indemnify them for the damages, liabilities, costs, and expenses they incurred.[4] ESI argues that the indemnity provisions do not cover first-party claims and that the plain language of the provision establishes that it only applies to third-party claims.

In Virginia, indemnity clauses may cover losses beyond third-party claims. *Kraft Foods N. Am., Inc. v. Banner Eng'g Sales, Inc.*, 446 F. Supp. 2d 551, 577 (E.D. Va. 2006) ("[T]he plain meaning definition of indemnification does not limit reimbursement to losses suffered as a result of third party claims."). To interpret an indemnity provision, a court should apply "[t]he general rules which govern the construction and interpretation of other contracts." *Seaboard Air Line R.R. Co. v. Richmond-Petersburg Tpk. Auth.*, 202 Va. 1029, 1033, 121 S.E.2d 499, 503 (1961). This means examining "the intention of the contracting parties as expressed by them in the words they have used." *Id.*

Here, ESI asks the Court to read the indemnity provision narrowly, only applying it to third-party claims. Although the provision covers third-party claims, it does not clearly exclude

---

[4] In the relevant indemnity provision, ESI agreed to "defend, indemnify[,] and hold harmless [SourceOne] . . . and [Veolia] against all damages, claims, actions, liabilities, fines, assessments[,] and expenses (including reasonable attorneys' fees and costs) arising out of or resulting in any way from (i) any defect in the products, (ii) any breach of any warranty or other term of this Subcontract, . . . and (iv) the negligent acts or omissions of Indemnifying Parties . . . related to the performance of the services under this Subcontract." (Dk. No. 40-1 ¶ 10.) ESI also agreed to "indemnify, defend[,] and hold harmless [SourceOne] against any suits, actions, judgments, costs . . ., losses, damages[,] or claims" arising out of any third-party intellectual property infringement claims. (*Id.*) The parties agree that the Court should consider the indemnity provisions under Virginia law.

5

first-party claims. Indeed, courts considering similar provisions have not limited those provisions only to third-party claims. *See, e.g., Kraft Foods N. Am.*, 446 F. Supp. 2d at 576-77; *Chesapeake & Potomac Tel. Co. of Va. v. Sisson & Ryan, Inc.*, 234 Va. 492, 501, 362 S.E.2d 723, 728 (1987). Accordingly, the Court will deny ESI's motion to dismiss Counts Three and Six.

### C. Count Five: Negligent Misrepresentation

In Count Five, Veolia alleges that it suffered harm as a result of its reliance on ESI's negligent misrepresentations about the recommended burners and suppliers. ESI contends that Virginia law governs the negligent misrepresentation claim because ESI's duty to Veolia arises out of the ESI agreements.[5] Veolia, however, argues that ESI owed it a common law duty, and that Massachusetts law governs that claim. The Court, therefore, must determine which state's law applies before it can determine whether Veolia states a claim for negligent misrepresentation.

To determine the appropriate choice of law rule, the Court must first consider whether the claim sounds in tort or contract. "The forum state applies its own law to ascertain whether the issue is one of tort or contract." *Buchanan v. Doe*, 246 Va. 67, 71, 431 S.E.2d 289, 291 (1993). In Virginia, "whether a cause of action sounds in contract or tort" depends on "the source of the duty violated." *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 256 Va. 553, 558, 507 S.E.2d 344, 347 (1998). If a claim arises out of a common law duty, the claim sounds in tort. *See id.* If a claim arises out of a duty created by a contract, the claim sounds in contract. *See id.*

Here, ESI's duty to Veolia arises out of the ESI agreements. *Cf. Blake Const. Co. v. Alley*, 233 Va. 31, 34, 353 S.E.2d 724, 726 (1987) ("[One contractor's] duties to . . . [another] contractor

---

[5] The ESI agreements include a choice of law provision specifying that the "[s]ubcontract shall be governed by and construed in accordance with the laws of the jurisdiction in which the [w]ork is performed." (Dk. No. 40-1 ¶ 17; Dk. No. 40-3 ¶ 17.) Because the work was performed in Virginia, Virginia law governs the parties' contract disputes.

6

arise from and are governed by the contracts related to the construction project."). Moreover, the plaintiffs allege that they suffered purely economic losses as a result of ESI's conduct. (Am. Compl. ¶ 29 ("SourceOne and Veolia have incurred Project delays, costs to investigate burner performance and operational modifications, costs to reconfigure and modify equipment, lost electricity revenue, increased operating and maintenance costs, damage to downstream equipment, and an anticipated reduction in the useful life of equipment.").)[6] A duty to protect against economic losses "is purely a creature of contract." *Blake Constr. Co.*, 233 Va. at 35, 353 S.E.2d at 727. Veolia, therefore, does not adequately allege that ESI owed it a common law duty. Because the ESI agreements created ESI's duty to Veolia, the claim sounds in contract. Thus, the Court will consider whether Veolia has stated a claim under Virginia law.

In Virginia, a plaintiff cannot assert tort claims for breach of a duty arising out of contract.[7] *See Tingler v. Graystone Homes, Inc.*, 298 Va. 63, 82, 834 S.E.2d 244, 255 (2019) ("No matter the alleged harm, tort liability cannot be imposed upon a contracting party for failing to do a contractual task when no common-law tort duty would have required him to do it anyway."). Because Veolia cannot assert a tort claim against ESI for duties arising out of a contract, the Court will dismiss Count Five with prejudice.

---

[6] In some cases, a plaintiff may recover in tort for property damage. *Cf. Blake Const. Co.*, 233 Va. at 33-34, 353 S.E.2d at 726. But considered together, the allegations in the complaint indicate that DuPont—not the plaintiffs—owned the downstream equipment. Thus, Veolia does not allege any damage to its own property as a result of ESI's alleged negligence.

[7] Even if the plaintiffs could assert a tort claim based on a contract duty, "Virginia does not recognize any tort of negligent misrepresentation." *Bentley v. Legent Corp.*, 849 F. Supp. 429, 434 (E.D. Va. 1994).

### III. CONCLUSION

Because the plaintiffs have failed to state a claim in Count Five, the Court will dismiss Count Five with prejudice. In all other respects, the Court will deny ESI's motion to dismiss.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 27 Jul 2020
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

8