IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SOURCEONE, INC. (DE),
           Plaintiff,

v.                                                                    Civil Action No. 3:19-cv-907

JOHN ZINK COMPANY, LLC,
           Defendant.

## OPINION

DuPont's Spruance industrial plant (the "Spruance Facility" or the "Facility") produces various consumer safety products that pervade our lives: the Nomex that protects our hands in the oven, the Kevlar in our car's tires, and the Tyvek that defends our homes from the elements. In 2018, the Spruance Facility upgraded parts of its infrastructure, including the conversion of its coal-fired burners to natural gas-fired burners. Through a series of contracts, John Zink Company, LLC ("John Zink"), agreed to provide natural gas-fired burners to the Spruance Facility. John Zink delivered the burners to the Facility, and they have remained in operation since December 2019.

SourceOne, Inc. (DE) ("SourceOne"), the company that commissioned the natural gas-fired burners for the Spruance Facility, alleges that the vertical flames produced by the burners John Zink supplied are too long. Because the flames are too long, they hit the superheater tubes above, creating various problems for the burners' operation, reliability, and safety. SourceOne, therefore, alleges that John Zink breached various express warranties by supplying burners that produce excessively long flames.

John Zink moves for summary judgment on several grounds, including that it did not guarantee a particular flame length. The Court, however, need not analyze the merits of the parties'

arguments or determine whether the flames are, indeed, too long because the voiding provision in the Purchase Order Terms & Conditions extinguishes SourceOne's claim. (*See* ECF No. 93-3, at 5 ("[John Zink's] warranties will be voided if . . . [SourceOne] has used . . . the [burners] . . . after discovery of the defect.").) SourceOne contends that its continued use of the burners after discovering the excessive flame length does not void John Zink's warranties because the flame length is not a "defect," because equitable estoppel and quasi-estoppel bar the enforcement of the voiding provision, and because the Spruance Facility has adjusted its "use" of the burners.

The Court disagrees. Because the allegedly excessive flame length renders the burners "defective," the Spruance Facility's continued use of the burners after SourceOne discovered the excessive flame length voided John Zink's warranties and extinguishes SourceOne's suit. Further, neither equitable estoppel nor quasi-estoppel bars the Court from enforcing the voiding provision, and SourceOne's adjusted use of the burners still amounts to "use" under the voiding provision. The Court, therefore, will grant John Zink's motion for summary judgment.

## I. **BACKGROUND**

On February 5, 2018, E.I. du Pont de Nemours and Company ("DuPont") contracted with Veolia to upgrade the burners at the Spruance Facility from coal-fired to natural gas-fired. Veolia entered into a contract with SourceOne to convert the burners. SourceOne, in turn, contracted with ESI to perform engineering services.

After reviewing bids for the burner equipment, ESI recommended Coen and John Zink to supply the new burners. According to SourceOne, however, Coen and John Zink's burners were faulty: the burners were supposed to produce flames about 24.5 feet long, but, instead, they produce flames between 30 and 39 feet long. (ECF Nos. 93-2, at 4; 101-2, at 22.) SourceOne and

Veolia assert that ESI's and John Zink's errors caused the burner issues.[1] SourceOne asserts one claim against John Zink: breach of the Burner Supply Agreement, which includes the Purchase Order Terms & Conditions (Count Four).[2] Specifically, SourceOne alleges that John Zink breached numerous express warranties by supplying burners that produces flames too long for their setting in the Spruance Facility. John Zink denies that the flames are too long and that it made any promises as to flame length.

John Zink asks the Court to grant summary judgment in its favor as to the breach of contract claim brought by SourceOne. To supports its motion, John Zink cited—in a footnote—the voiding provision and argued that "[t]o the extent SourceOne claims the burners are defective, the continued use of the burners voids John Zink's warranties." (ECF No. 94, at 20 n.8.) Specifically, "SourceOne discovered any alleged 'defect' concerning flame length well before acceptance occurred in December 2019; yet the burners remain in operation at the Facility." (*Id.*) SourceOne did not address this argument in its briefing. Reluctant to snuff out SourceOne's claim based on a footnote, the Court directed the parties to submit additional briefing addressing whether the voiding provision defeats SourceOne's claim for breach of contract. Specifically, the Court directed the parties to answer this question: Does SourceOne's allegation that the burners' flames are too long amount to a "defect," thereby voiding the warranty provisions under which SourceOne sues? The parties, of course, disagree on the answer.

---

[1] SourceOne and Veolia voluntarily dismissed ESI and Coen as defendants. Thus, John Zink is the only remaining defendant.

[2] The parties have voluntarily dismissed all other claims. Because Veolia does not bring Count Four, SourceOne is the only remaining plaintiff.

## II. CONTRACT PROVISIONS AT ISSUE

Although evidence of the underlying dispute fills reams of paper, the Court need only refer to three provisions in the Purchase Order Terms & Conditions to decide whether the voiding provision defeats SourceOne's breach of warranty claim. (ECF No. 93-3.)

<u>Warranty Provision</u>: "Seller [John Zink] warrants to Buyer [SourceOne] and its customers that the Goods and Services [the burners] furnished will be of good quality, free from <u>defects</u> in material, design and workmanship, will conform to the specifications, drawing, or samples." (*Id.* at 5 (emphasis added).) [3]

<u>Voiding Provision</u>: "Seller's [John Zink's] warranties will be voided if . . . Buyer [SourceOne] has used or repaired the Goods or the subject of the Services after discovery of the <u>defect</u>." (*Id.* (emphasis added).)

<u>Remedy Provision</u>: "BUYER'S [SourceOne's] REMEDIES ARE SPECIFICALLY LIMITED TO THE REPAIR OR REPLACEMENT OF THE WORK, DURING THE WARRANTY PERIOD AND ARE EXCLUSIVE OF ALL OTHER REMEDIES. SHOULD THESE REMEDIES BE FOUND INADEQUATE OR TO HAVE FAILED OF THEIR ESSENTIAL PURPOSE FOR ANY REASON WHATSOEVER, BUYER [SourceOne] AGREES THAT RETURN OF THE AMOUNT PAID TO THE SELLER [John Zink] FOR THE <u>DEFECTIVE</u> GOODS SHALL PREVENT THE REMEDIES FROM FAILING THEIR

---

[3] The Court recognizes that the proper construction of the warranty provision is elusive because of the inconsistent use of the Oxford comma, of which this Court is a fan, and the use of conjunctions, or lack thereof. The drafter favored the Oxford comma after "drawings," but left it out after "design." Without an "and" before "will conform to the specifications," the reader loses track of precisely what the Seller promises. These difficulties, however, are of no import for the question before the Court.

ESSENTIAL PURPOSE AND SHALL BE CONSIDERED A FAIR AND ADEQUATE REMEDY." (*Id.* at 6 (emphasis added).)

### III. LEGAL STANDARDS

To decide whether the voiding provision defeats SourceOne's claim for breach of contract, the Court must interpret the contract between SourceOne and John Zink and decide the meaning of "defect" in the voiding provision. "The interpretation of contract language is a question of law" for courts to decide. *AT&T Corp. v. Lillis*, 953 A.2d 241, 251–52 (Del. 2008) (cleaned up). The Court applies Delaware law to answer this question because of the Burner Supply Agreement's choice-of-law provision.[4]

"The basic rule of contract construction gives priority to the intention of the parties. In upholding the intentions of the parties, a court must construe the agreement as a whole, giving effect to all provisions therein." *E.I. du Pont de Nemours and Co., Inc. v. Shell Oil Co.*, 498 A.2d 1108, 1113 (Del. 1985). The "principal question" for a court interpreting a contract is "whether or not the contractual language is ambiguous." *E.I. du Pont de Nemours & Co. v. Admiral Ins. Co.*, 711 A.2d 45, 59 (Del. 1995).

#### *1. Unambiguous Language*

"Courts will not torture contractual terms to impart ambiguity where ordinary meaning leaves no room for uncertainty. The true test is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant."

---

[4] "The contract resulting from acceptance of this Order by Seller shall be governed by and construed under the laws of the State of Delaware . . . ." (ECF No. 93-3, at 3.)

"Virginia law looks favorably upon choice-of-law clauses in a contract, giving them full effect except in unusual circumstances." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir. 1999) (citing *Tate v. Hain*, 181 Va. 402, 410, 25 S.E.2d 321, 324 (1943)). Neither party disputes the validity or enforceability of the choice-of-law provision in this case.

*Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992). "Clear and unambiguous language" in a contract "should be given its ordinary and usual meaning." *Id.* at 1196. "[D]ictionaries are helpful in finding the ordinary meaning of a term . . . ." *Admiral Ins. Co.*, 711 A.2d at 59.

### 2. *Ambiguous Language*

A contract provision is ambiguous if a court finds it is "reasonably or fairly susceptible of different interpretations or may have two or more different meanings" after considering dictionary definitions and what a reasonable person in the parties' position would have thought the contract provision meant. *Am. Motorist Ins. Co.*, 616 A.2d at 1196. A court charged with interpreting an ambiguous contract provision "must look beyond the language of the contract to ascertain the parties' intentions." *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997). A court may consider the following sorts of evidence to determine the parties' intentions: overt statements and acts of the parties, business context or custom, evidence of prior agreements between the parties, communications of the parties, and trade usage. *Id.* When interpreting an ambiguous contract provision, courts should construe the ambiguous language against its drafter. *See Twin City Fire Ins. Co. v. Del. Racing Ass'n*, 840 A.2d 624, 630 (Del. 2003).

## IV. DISCUSSION[5]

### A. Defect

John Zink disputes SourceOne's allegation that the burners' flames are too long. Even if the flames are too long, however, John Zink argues that SourceOne's breach of warranty claim

---

[5] Rule 56 of the Federal Rules of Civil Procedure directs courts to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a summary judgment motion, the court must draw all reasonable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Nevertheless, if the non-moving party fails to

fails because of the voiding provision. Specifically, John Zink argues that any excessively long flame amounts to a "defect," and the undisputed continued use of the burners in the Spruance Facility after discovering this defect triggers the voiding provision, nullifying the warranties that SourceOne alleges John Zink violated.

In support of its position, John Zink relies on the plain meaning of the term "defect" and the remedy provision of the contract. Without citing to any dictionary, John Zink defines "defect" and its derivative, "defective," as "a shortcoming, imperfection, or lack." (ECF No. 121, at 4.) John Zink contends that an excessive flame length falls within this definition. Next, John Zink points to the remedy provision, which reads: "Buyer agrees that return of the amount paid to seller for the *defective* goods shall prevent the remedies from failing their essential purpose." (*Id.* at 3.) SourceOne seeks to collect under this remedy provision, which John Zink argues "necessarily implie[s] that SourceOne believes John Zink supplied *defective* burners." (*Id.* at 4.)

SourceOne argues that excessive flame length does *not* amount to a defect. According to SourceOne, "[t]he burners are not malfunctioning: they are performing as ECOjet32 burners are designed to perform." (ECF No. 117, at 1.) They are simply *"the wrong burners for this application."* (*Id.*) Put differently, SourceOne says that the burners themselves are perfect and, therefore, not defective. The burners' flames, however, are too long for the Spruance Facility and exceed what John Zink promised. SourceOne, therefore, accuses John Zink of violating warranties of "good quality" and conformance to "the specifications, drawing, or samples." (ECF No. 93-3, at 5.)

---

sufficiently establish the existence of an essential element to its claim on which it bears the ultimate burden of proof, the court should enter summary judgment against that party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In support of its position, SourceOne argues that the contract distinguishes between "defect" and "non-conformity." SourceOne points to the warranty provision, which lists "free from defects in material, design and workmanship" separately from "will conform to the specifications, drawing, or samples." (*Id.*) SourceOne argues that because the warranty provision lists these promises separately, they are mutually exclusive. Based on this distinction, SourceOne argues that the burners are not defective; they are simply non-conforming. Further, because John Zink drafted the voiding provision, SourceOne argues that the Court should construe any ambiguity in the provision (here, whether "defect" includes "non-conformity") against John Zink.

\* \* \*

Because John Zink and SourceOne knew that the burners would be installed in the Spruance Facility,[6] "a reasonable person in the position of the parties" would understand "defect" to capture any "shortcoming" of the burners' use in the Spruance Facility.[7] *Am. Motorist Ins. Co.*, 616 A.2d at 1196. SourceOne and John Zink did not enter this contract in a vacuum. SourceOne

---

[6] Some John Zink employees did not know that the burners were destined for the Spruance Facility when responding to SourceOne's request for quote in July 2017; even at that time, however, these employees knew the intended installation site's specifications. (*See* ECF No. 93-8.)
John Zink learned that the Spruance Facility would house the burners at some point before it modified and agreed to the Purchase Order Terms & Conditions on November 9, 2017, and November 10, 2017, respectively. (*See* ECF Nos. 93, at 4; 93-3; 93-2 (listing as the subject of the October 18, 2017 proposal: "Ultra-Low NOx Burners *for Veolia Spruance in Richmond Virginia*" (emphasis added)).)

[7] Throughout its analysis, the Court will use definitions from the Collins American Dictionary. *Collins Dictionary*, https://www.collinsdictionary.com/ (last visited Apr. 7, 2021). Collins defines "defect" as "a lack of something necessary for completeness or perfection; shortcoming; deficiency" and "an imperfection, failing, or blemish." It defines "imperfection" as "a fault, weakness, or undesirable feature." It defines "defective" as "having a defect or flaw."

commissioned burners *for the Spruance Facility*.[8] A reasonable person in the parties' position would, therefore, deem the burners "defective" if the burners do not function perfectly in the Spruance Facility. Thus, the Court finds the voiding provision unambiguous.[9] Although the burners may be perfect when viewed in isolation, the alleged flame length renders the burners imperfect for use in the Spruance Facility and, therefore, defective.[10]

SourceOne relies on a misleading distinction for its argument to the contrary. Although the warranty provision lists specific defects—"defects in material, design and workmanship"—separately from non-conformity to the design specifications, the general term "defect" can capture both "defects in material, design and workmanship" *and* non-conformity "to the specifications, drawing, or samples," as long as the "defects in material, design and workmanship" and non-conformity "to the specifications, drawing, or samples" cause a failing or shortcoming in the burners' performance in the Spruance Facility. For example, here, John Zink represented that the burners it supplied would produce flames about 24.5 feet long. (ECF Nos. 93-2, at 4.) What if

---

[8] (*See* ECF Nos. 93-2 (listing as the subject of the proposal: "Ultra-Low NOx Burners *for Veolia Spruance in Richmond Virginia*" (emphasis added)); 93-4 (offering as a description of the goods in the purchase order: "Burners *for Spruance Congen Proj.*" (emphasis added)); 101-3 (listing "*Veolia Spruance*" as the focus of the Computational Fluid Dynamics Study of Combustion (emphasis added)).)

[9] Because the Court finds the voiding provision unambiguous, it does not construe the language against John Zink. This doctrine applies when a court finds a provision ambiguous. *See Twin City Fire Ins. Co*, 840 A.2d at 630 ("When interpreting an ambiguous contract provision, courts should construe the ambiguous language against its drafter.").

[10] In some situations, the Court would subscribe to SourceOne's narrow definition of "defect." For example, if a federal judge went to the store to purchase a robe for work and brought a bathrobe back to chambers, the bathrobe is not "defective" even though it is far from perfect for wearing on the bench. Conversely, if a federal judge commissioned a tailor to make a robe to wear on the federal bench, and the tailor produced a bathrobe, the robe *is* "defective." Because the judge shared with the tailor where he intended to wear the robe, one would assess the robe's perfection—or lack thereof—relative to its intended context. This latter example resembles the situation here.

John Zink supplied burners that it designed to produce six-inch flames?[11] In that case, the supplied burners would not conform to the specifications that the burners would produce flames about 24.5 feet long *and* the Lilliputian flames would properly be characterized as "defects," assuming the supplied burners would fail to perform their intended purpose as well as burners that produce 24.5-foot flames.

The remedy provision does not contradict the conclusion that the alleged flame length renders the burners defective. The remedy provision only refers to "defective goods." Based on the definition of "defective" and the contract's construction, the term "defective" in the remedy provision unambiguously captures the myriad ways a good can be considered flawed. *Cf. Giesecke+ Devrient Mobile Sec. Am., Inc. v. Nxt-ID, Inc.*, No. 2020-664, 2021 WL 982597, at *10 (Del. Ch. Mar. 16, 2021) (referencing "the well-accepted canon of contract construction that absent anything indicating a contrary intent, the same phrase should be given the same meaning when it is used in different places in the same contract" (cleaned up)); 11 Williston on Contracts § 32.6 (4th ed. 1990) ("Generally, a word used by the parties in one sense will be given the same meaning throughout the contract in the absence of countervailing reasons."). And, for the reasons discussed above, to determine whether the goods supplied under this contract are flawed, one must consider whether the goods perform perfectly in the Spruance Facility. Thus, "defective goods" in the remedy provision captures burners that demonstrate a shortcoming either when viewed in isolation *or* when used in the Spruance Facility.

---

[11] Note that SourceOne's argument asks the Court to assume that the problematic burners conform perfectly to some unidentified design specification that call for 30- to 39-foot flames. SourceOne has not produced any evidence that such design specifications exist or that John Zink's burners complied perfectly with these mystery specifications.

Because the allegedly excessive flame length causes the burners not to function perfectly in the Spruance Facility, the flame length amounts to a "defect" under the voiding provision. Thus, John Zink's warranties became voided when the Spruance Facility continued to use the burners after finding that they produce flames too long for the Spruance Facility.

### *B. SourceOne's Alternative Arguments*

SourceOne argues that even if it alleges a defect that implicates the voiding provision, the Court should not grant summary judgment to John Zink for three reasons: the application of equitable estoppel and quasi-estoppel and the Spruance Facility's adjusted "use" of the burners.

#### *1. Equitable Estoppel*

Equitable estoppel "prevents the assertion of a contractual condition by a party who, through words or conduct, has fostered the impression that the condition will not be asserted as a legal defense." *First Fed. Sav. & Loan Ass'n v. Nationwide Mut. Fire Ins. Co.*, 460 A.2d 543, 545 (Del. 1983). "To establish estoppel, the party claiming estoppel must show the following three elements: (1) she 'lacked knowledge or the means of obtaining knowledge of the truth of the facts in question,' (2) she 'relied on the conduct of the party against whom estoppel is claimed,' and (3) she 'suffered a prejudicial change of position as a result of h[er] reliance.'" *Bantum v. New Castle Cnty. Vo-Tech Educ. Ass'n*, 21 A.3d 44, 51 (Del. 2011) (alterations in original) (quoting *Waggoner v. Laster*, 581 A.2d 1127 (Del. 1990)). In *Genencor International, Inc. v. Novo Nordisk A/S*, the Delaware Supreme Court explained that equitable estoppel does not apply when the "dispute [is] about enforcement of a bargained-for contract right." 766 A.2d 8, 12 (Del. 2000).[12]

---

[12] *See also Hallisey v. Artic Intermediate, LLC*, No. 2019-980, 2020 WL 6438990, at *4 (Del. Ch. Oct. 29, 2020) ("In a dispute about enforcement of a bargained-for contract right, equitable estoppel is not the proper remedy."); 31 C.J.S. Scope and Effect of Estoppel as to Contract § 208 ("Equitable estoppel is inapplicable when the parties are bound by an express contract.").

SourceOne argues that John Zink is estopped from enforcing the voiding provision because John Zink never indicated that the flames' length was a defect, that the Spruance Facility should stop using the burners, or that continuing to use the burners would trigger the voiding provision. Because SourceOne seeks to enforce its rights under a bargained-for contract, however, the Court questions whether equitable estoppel even applies to this case. Even if it did, however, SourceOne's argument fails because the company did not lack "knowledge or the means of obtaining knowledge" about whether the flames produced by the burners amounted to "defects" under the Burner Supply Agreement and whether continued use of the burners would trigger the voiding provision. *Bantum*, 21 A.3d at 51.

### 2. *Quasi-Estoppel*

"[T]he doctrine of quasi-estoppel applies 'when it would be unconscionable to allow a person to maintain a position inconsistent with one to which he acquiesced, or from which he accepted a benefit.'" *RBC Capital Mkts., LLC v. Jervis*, 129 A.3d 816, 872–73 (Del. 2015). "'The standard remains high' for invoking the doctrine of quasi-estoppel." *Golden Rule Fin. Corp. v. S'holder Representative Servs. LLC*, No. 2020-378, 2021 WL 305741, at *14 (Del. Ch. Jan. 29, 2021). "Furthermore, 'courts are particularly reluctant to find unconscionability in contracts between sophisticated corporations.'" *Id.* at *15 (quoting *Rsvrs. Mgmt., LLC v. Am. Acquisition Prop. I, LLC*, No. 673, 2012, 2014 WL 823407, at *9 (Del. Feb. 28, 2014)).

SourceOne argues that before this litigation, John Zink consistently represented that the burners function properly despite their allegedly excessive flame length. (ECF No. 117-3, at 76:6–14; 154:18–155:3; 160:1–7; 160:18–22; 188:8–11; 194:22–195:2.) Thus, according to SourceOne, quasi-estoppel prevents John Zink from arguing, in this litigation, that the allegedly excessive flame length amounts to a "defect." The Court recognizes that John Zink has spoken out of both

12

sides of its mouth. Before this litigation, John Zink told SourceOne that the burners worked just as they should. (*Id.*) During litigation, John Zink maintains this position but adds an alternative argument: to the extent the burners produce excessively long flames, these flames amount to "defects" such that the Spruance Facility's continued use of the burners after SourceOne discovered the "defects" voided any warranties. The Court does not find that it is unconscionable for John Zink to make this argument even though it flies in the face of what John Zink told SourceOne before litigation.

*Personnel Decisions, Inc. v. Business Planning Systems, Inc.*, offers an explanation by comparison. No. 3212, 2008 WL 1932404 (Del. Ch. May 5, 2008). In that case,

> the defendant sent a notice of arbitration to the plaintiff, invoking provisions of the Delaware Uniform Arbitration Act ("DUAA") that, according to the defendant, required the plaintiff to respond within twenty days. Four years later, after the defendant formally initiated arbitration, the plaintiff brought an action in this court, seeking to enjoin the arbitration pursuant to other DUAA provisions. From the notice of arbitration in 2003 until the conclusion of briefing in early 2008, the parties worked under the assumption that the DUAA applied to the claims. Once the court raised the question of whether the parties' contract should instead be governed by the Federal Arbitration Act ("FAA"), however, the defendant argued that the FAA controlled and that the case should be dismissed for lack of subject matter jurisdiction. The court concluded that the parties' course of performance demonstrated that they intended to apply the DUAA. The court alternatively rejected the defendant's argument on the basis of quasi-estoppel, finding that it would be unconscionable to allow the defendant to make a "graceless," "self-interested 180[-]degree turn" so late in the litigation.

*Golden Rule Fin. Corp.*, 2021 WL 305741, at *14. "This case does not present such compelling circumstances." *Id.* In *Personnel*, adherence to the DUAA prevented the plaintiff from arbitrating under the FAA. Here, John Zink maintaining that its burners functioned properly did not preclude SourceOne from independently assessing whether the allegedly excessive flame length amounted to a "defect," such that the Spruance Facility's continued use of the burners would void John Zink's warranties. SourceOne, like John Zink, is a sophisticated corporation that can hire lawyers to read

13

its contracts and determine how to preserve the company's contractual rights. The Court recognizes that John Zink added a fallback argument during litigation: if the Court does not agree with its assessment that the burners function properly, it still wins under the contract because of the voiding provision. The Court, however, finds this argument "a predictable consequence of" zealous litigation, *Jervis*, 129 A.3d at 873, and declines to estop John Zink from making it.

### 3. *Adjusted Use*

Finally, SourceOne contends that "even if the voiding provision applie[s], and even if [John] Zink is not estopped from enforcing it, the Spruance Plant complied with the voiding provision: it stopped using the burners in a way that could cause damage from excessive flame length." (ECF No. 117, at 9.) The Court recognizes that it is possible—perhaps even likely—that the "intent behind the Voiding Provision is to halt usage of defective equipment before continued operation in a defective condition causes damage or exacerbates the condition." (*Id.*) But the clear and unambiguous language of the contract does not express that intent. *Maryland v. Attman/Glazer P.B. Co.*, 323 Md. 592, 605–06 (1991) ("[W]hen the language of the contract is plain and unambiguous . . . a court must presume that the parties meant what they expressed.");[13] *cf. Steigler v. Ins. Co. of N. Am.*, 384 A.2d 398, 401 (Del. 1978) (explaining that contracts "should be read to accord with the reasonable expectations of the purchaser *so far as the language will permit*" (emphasis added) (quoting *State Farm Mutual Auto. Ins. Co. v. Johnson*, 320 A.2d 345, 347 (Del. 1974))). Here, the contract's language permits only one construction. (ECF No. 93-3, at 5 ("[W]arranties will be voided if . . . Buyer has used . . . the Goods . . . after discovery of the

---

[13] The Supreme Court of Delaware cited approvingly to this Maryland state case in *Am. Motorist Ins. Co.* 616 A.2d at 1196.

defect.").) Because the Spruance Facility continues to use the burners—even in a different way—John Zink's warranties are voided pursuant to the voiding provision.

## V. CONCLUSION

SourceOne's only remaining claim alleges that John Zink violated various warranties in the Purchase Order Terms & Conditions by supplying burners that produced flames that are too long for the Spruance Facility. Because the allegedly excessive flame length amounts to a "defect," the Spruance Facility's continued use of the burners after discovering the flame length voided John Zink's warranties. The Court, therefore, will grant summary judgment for John Zink.

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: 27 April 2021
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge